UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Rebecca C. Robinson et al,

          Plaintiffs,

v.

Bank of America, N.A. et al,

          Defendants,

Civil No. 11-2284 (MJD/LIB)

**REPORT AND RECOMMENDATION**

---

      This matter came before the undersigned United States Magistrate Judge upon Defendants' motions to dismiss, Plaintiffs' motion to remand to state court, and Defendants' motion for costs pursuant to Federal Rule of Civil Procedure 41(d).  The motions have been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.  For the reasons outlined below, the Court recommends that Defendants' motions to dismiss be granted, Plaintiffs' motion to remand be denied, and Defendants' motion for costs be granted subject to a subsequent hearing to determine the amount of fees and costs to be awarded.

## I.   BACKGROUND

      In this case, 40 plaintiffs bring claims alleging that they are the owners of 27 separate properties, that they have been wronged by their lending institutions, and that Peterson, Fram & Bergman, P.A., (Law Firm) helped initiate improper foreclosure actions against Plaintiffs.  Each plaintiff provides that he/she executed a promissory note and mortgage for their respective property.  (Am. Compl. [Docket No. 10] ¶¶ 1-27).  Plaintiffs allege that Bank of America, N.A.; BAC Home Loans Servicing, LP; Mortgage Electronic Registration Services, Inc.; Merscorp,

Inc.; Wells Fargo Bank N.A; Federal National Mortgage Association; U.S. Bank, National

Association; and Bank of New York Mellon (Bank Defendants) have asserted "invalid and

voidable mortgages" against them.  (Id. ¶ 38).  Additionally, Plaintiffs allege that Defendant Law

Firm violated its alleged duty to ensure that its clients possessed or were entitled to enforce the

Original Notes of the Plaintiffs' mortgage when effecting non-judicial foreclosures in Minnesota

against Plaintiffs' properties.  (Compl. ¶¶ 36-37).

Specifically, Plaintiffs allege 19 separate counts: 1) Defendants are not Holders of the

Original Notes; 2) Defendants are not Holders in Due Course of the Original Notes; 3)

Defendants are not Real Parties in Interest; 4) Defendants do not have Legal Standing to

Foreclose Mortgages; 5) Demand to Exhibit the Original Notes; 6) Mortgage not Properly

Perfected; 7) Slander of Title; 8) Conversion; 9) Unjust Enrichment; 10) Civil Conspiracy; 11)

Breach of Fiduciary Duty; 12) Fraud (against all Defendants); 13) Negligent Misrepresentation;

14) Fraud (against Law Firm); 15) Equitable Estoppel; 16) Due Process Violation; 17) Discharge

of Obligation; 18) Qui Tam – Private Attorney General Enforcement of Minn. Stat. §§ 357.18,

508.82, 508A.82; and 19) Accounting.

All Plaintiffs, except Rebecca C. Robinson and Edward B. Hughes, brought these same

claims (in addition to other similar claims) in a previous action in this District.

### A.  Procedural History

On October 26, 2010, a number of plaintiffs (Tully plaintiffs)[1] commenced an action in

state court with Mr. William Butler as their attorney.  The complaint alleged improper

foreclosure and additional claims for due process violations, unjust enrichment, and fraud, such

---

[1] They include the following plaintiffs: 1) Mark A. Tully; 2) Thane T. Truax; 3) Vicki K. Truax; 4) Kenneth Britt; 5) Lavera "Sand" Britt; 6) Jerry G. Lindholm; 7) Janelle C. Lindholm; 8) Robi J. Nash; 9) Jorge L. Cervera; 10) Julia Cervera; 11) Brad A. Cartier; 12) Donald Houck; 13) Nathan Houck; 14) Jared Rothenberger; 15) Scott Dobesh; 16) Jeffrey F. Cox; 17) Chip A. Rice; 18) Linda S. Rice; and 19) Richard Procter.  See Tully v. Bank of America, N.A. et al, No. 10-4734 (DWF/TNL), Docket No.1, Ex. 1.

as are now at issue before the Court.  See Tully v. Bank of America, N.A. et al, No. 10-4734

(DWF/TNL), Docket No.1, Ex. 1.  The defendants in Tully removed the case to federal court on

November 24, 2010.  (See id.)  Upon Defendants' motions to dismiss, on May 17, 2011, the

Honorable Donovan W. Frank dismissed all of the claims without prejudice because of a

pleading failure.  Tully v. Bank of America, N.A., No. 10-4734 (DWF/TNL), 2011 WL

1882665, at *6 (D. Minn. May 17, 2011).  Judge Frank also found that Sheriff Richard W.

Stanek was fraudulently joined and denied Plaintiffs' motion to remand.  Id. at *4.

 The Tully complaint was amended, 3 plaintiffs dropped out, and 9 additional plaintiffs

were added before the action was brought again in state court on June 3, 2011.[2]  See Larsen et al

v. Bank of America, N.A. et al, No. 11-1775 (MJD/JSM), Docket No.1, Ex.1.  On July 1, 2011,

Plaintiffs filed an Amended Complaint, which added an additional 13 plaintiffs to the case.[3]  Id.,

Docket No. 2.  The Larsen defendants removed the case to federal court once again on July 5,

2011.  Id.  On July 7, 2011, the plaintiffs filed a motion to remand to state court.  Id., Docket No.

10.

 While the plaintiffs' motion to remand was pending, on July 13, 2011, Judge Frank

issued a decision—in a separate action brought by Mr. Butler that involved the same types of

claims—in which Judge Frank found that the claims failed as a matter of law.  Butler v. Bank of

America, N.A., No. 11-461, 2011 WL 2728321, at *7 (D. Minn. Jul. 13, 2011).  Judge Frank also

---

[2] Plaintiffs now included: 1) David B. Larsen; 2) Bobbie Jo Larsen; 3) Victor A. Ngaling; 4) Rebecca N. Ngaling; 5) Bernard Simpser; 6) Renee S. Simpser; 7) Mark A. Tully; 8) Thane T. Truax; 9) Vicki K. Truax; 10) Kenneth Britt; 11) Lavera Britt; 12) Jerry G. Lindholm; 13) Janelle C. Lindholm; 14) Robi J. Nash; 15) Jorge L. Cervera; 16) Julia Cervera; 17) Brad A. Cartier; 18) Scott Dobesh; 19) Jeffrey F. Cox; 20) Chip A. Rice; 21) Linda S. Rice; 22) Richard Procter; 23) Elizabeth A. Manning; 24) Dean Welk; and 25) Patrick Schmeichel. The Plaintiffs no longer in the action included: 1) Donald Houck; 2) Nathan Houck; and 3) Jared Rothenberger.
[3] Newly added plaintiffs included: 1) Terry Alan Thornberg; 2) Marci Marie Thornberg; 3) Charlotte Williams; 4) Keith Williams; 5) Brian Wildeman; 6) Becki Wildeman; 7) Jenifer M. Schmitz; 8) Joy C. Thompsen; 9) Joseph Conely; 10) Dawn Conely; 11) Sylvia A. Gilbert; 12) Kenneth E. Gilbert; and 13) William Determan.

denied the motion to remand, finding that the law firm defendant had been fraudulently joined.
Id.

Subsequently, on July 21, 2012, relying on Judge Frank's decision in Butler, Magistrate Judge Janie S. Mayeron issued a report and recommendation stating that the motion to remand should be denied because the law firm had been fraudulently joined.  See Larsen et al v. Bank of America, N.A., et al., No. 11-1775 (MJD/JSM), 2011 WL 6065426 (D. Minn. Jul. 21, 2011).

Rather than objecting to Magistrate Judge Mayeron's report and recommendation, the plaintiffs voluntarily dismissed their case on July 27, 2011.  The plaintiffs (with the assistance of their Counsel, Mr. Butler) once again amended the complaint, added two additional plaintiffs (Rebecca C. Robinson and Edward B. Hughes) and on the very same day that they dismissed their complaint in federal court, they brought the action in state court.  Robinson et al v. Bank of America, N.A. et al, No. 11-2284 (MJD/LIB), Docket No. 1, Ex. 1.  The case was then once again removed on August 9, 2011 and is now before the Court as Robinson et al v. Bank of America, N.A. et al.  Id.  On August 12, 2011, Plaintiffs filed an Amended Complaint.  (See Docket No. 5).[4]

## II.   DEFENDANTS' MOTIONS TO DISMISS

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  On a motion to dismiss, the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant."  Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004).  Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This

---

[4] In all of the actions described in Section I.A., attorney William Butler represented all the plaintiffs.

requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiff must "plead[ ] factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

        "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Twombly, 550 U.S. at 555 (internal citations and quotation marks

omitted).  Plaintiff's factual allegations must be "enough to raise a right to relief above the

speculative level."  Id.  Courts must undertake the "context-specific task" of determining

whether the plaintiff's allegations "nudge" her claims against each defendant "across the line

from conceivable to plausible."  Iqbal, 556 U.S. at 679-80 (quoting Twombly, 550 U.S. at 570).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully."  Farnham St. Fin., Inc. v. Pump Media,

Inc., No. 09-233 (MJD/FLN), 2009 WL 4672668 at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal,

129 S. Ct. at 1949).

        Facts pled which "give the defendant fair notice of what the claim is and the grounds

upon which it rests" meet the 12(b)(6) standard.  Twombly, 550 U.S. at 555 (quoting Conley v.

Gibson, 355 U.S. 41, 47 (1957)).  When analyzing a complaint on a 12(b)(6) motion to dismiss,

courts should read the complaint "as a whole, not parsed piece by piece to determine whether

each allegation, in isolation, is plausible."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594

(8th Cir. 2009).  Deciding whether a complaint states a plausible claim for relief is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

### B.  All of Plaintiffs' Claims are Dependent on the "Show-Me-the-Note" Theory[5]

Despite their best attempts in the Amended Complaint to avoid labeling their claims as a "show-me-the-note" case, that is precisely the theory upon which Plaintiffs' claims are based. (Am. Compl. ¶¶ 39-59) (arguing in various ways that Defendants have no legal right to the promissory notes executed by Plaintiffs and as such Defendants cannot therefore foreclose on Plaintiffs' properties).  In several instances, Plaintiffs reassert the crux of their claim: Defendants do not possess the original notes.  (Id. ¶ 40) ("Defendants are not in possession of Plaintiffs' Original Notes and are not otherwise entitled to enforce Plaintiffs' Original Notes."); (Id. ¶ 43) (Defendants "do not have valid, clear legal title to the Plaintiffs' Original Notes."); (Id. ¶ 44) (Defendants "are not holders of Plaintiffs' Original Notes, do not have physical possession of Plaintiffs' Original Notes . . . ."); (Id. ¶ 49) ("Defendants do not have actual physical possession of Plaintiffs' Original Notes.").  This legal theory has appropriately been dubbed the "show-me-the-note" theory.  See Murphy v. Aurora Loan Servs., LLC, No. 11-2750 (ADM/JJK), 2012 WL 104543, at *2 (D. Minn. Jan. 12, 2012).

Relying further upon this "show-me-the-note" proposition, Plaintiffs allege that the Bank Defendants and Defendant Law Firm were aware of their inability to enforce any legal rights against the promissory notes and are abusing Minnesota's non-judicial foreclosure process.

---

[5] Generally, "[t]he court must resolve questions of jurisdiction before considering the merits of an action." Dunbar v. Wells Fargo Bank, N.A., No. 11-3683 (DSD/FLN), 2012 WL 1231843, at *2 (D. Minn. Apr. 12, 2012).  In this case, however, one of Plaintiffs' asserted bases for remand is lack of diversity, which, in this case, requires the Court to analyze the issue of fraudulent joinder and the merits of the claims against the non-diverse defendant.  Because Plaintiffs' claims against the nondiverse defendant are intractably connected to the claims against the remaining defendants—based on the "show-me-the-note" theory—the Court finds it prudent to first address the merits of Plaintiffs' claims before addressing Plaintiffs' motion to remand.  See Welk v. GMAC Mortg., LLC, No. 11-2676 (PJS/JJK), 2012 WL 1035433, at *3 (D. Minn. Mar. 29, 2012) (analyzing the merits of the plaintiffs' claims before addressing motion to remand).

(Compl. ¶¶ 58-59).  As such, for all of the 27 properties at issue, Plaintiffs allege that "[b]ecause Defendants have no direct right to receive payments due on the Original Notes, Defendants cannot exercise foreclosure rights in the Mortgages."  (Id. ¶ 51).  This legal premise is at the very heart of all of Plaintiffs' claims.

The legal premise relied on by Plaintiffs—that a mortgagee must have possession of both the underlying promissory note and the mortgage to initiate non-judicial foreclosure—has been decisively and continually rejected in both Minnesota state and federal courts.  The Minnesota Supreme Court rejected it, Jackson v. Mortgage Electronic Registration Systems, Inc., 770 N.W.2d 487 (Minn. 2009); the Eighth Circuit rejected it, Stein v. Chase Home Fin., LLC, 662 F.3d 976, 980 (8th Cir. 2011); and every judge in this District who has faced the issue has rejected it.  See Peterson v. Citimortgage, Inc., No. 11-2385 (SRN/JJG) (D. Minn. May 30, 2012); Pope v. Wells Fargo Bank, N.A., No. 11-2496 (SRN/FLN), 2012 WL 1886493 (D. Minn. May 23, 2012); Karnatcheva v. JPMorgan Chase Bank, N.A., No. 11-3452 (MJD/SER), 2012 WL 1657531, at *5 (D. Minn. May 11, 2012); Kraus v. CitiMortgage, Inc., No. 11-3213 (DWF/FLN), 2012 WL 1581113, at *3-4 (D. Minn. May 4, 2012); Olson v. Bank of America, N.A., No. 11-3710 (PAM/FLN), 2012 WL 1660615, at *3-4 (D. Minn. Apr. 19, 2012); Dunbar v. Wells Fargo Bank, N.A., No. 11-3683 (DSD/FLN), 2012 WL 1110161, at *6-7 (D. Minn. Apr. 3, 2012); Welk v. GMAC Mortg., LLC, No. 11-2676 (PJS/JJK), 2012 WL 1035433, at *11 (D. Minn. Mar. 29, 2012); Cartier v. Wells Fargo Bank, N.A., No. 11-2168 (D. Minn. Feb. 22, 2012); Iverson v. Wells Fargo Bank, N.A., No. 11-2225 (MJD/AJB), 2012 WL 611196, at *3 (D. Minn. Feb. 6, 2012) (Report and Recommendation), adopted, 2012 WL 611371 (D. Minn. Feb. 24, 2012); Jerde v. JPMorgan Chase Bank, N.A., No. 11-2666 (PAM/FLN), 2012 WL 206271, at

*2-3 (D. Minn. Jan. 24, 2012); Murphy, 2012 WL 104543, at *3-5; Butler v. Bank of America, N.A., No. 11-461 (DWF/TNL), 2011 WL 2728321, at *6-7 (D. Minn. Jul. 13, 2011).[6]

In Welk, the Honorable Patrick J. Schiltz succinctly and clearly explained that the law does not support Plaintiffs' argument:

> Jackson thus made abundantly clear that (1) an entity need not hold any interest in a note in order to hold legal and record title to the mortgage securing the note; (2) the holder of legal and record title to the mortgage may foreclose by advertisement—indeed, it is the only entity that may foreclose by advertisement—even if a different entity holds the note; and finally (3) a mortgagor cannot challenge a foreclosure on the basis that there might be a dispute between the legal and record holder of the mortgage, on the one hand, and the equitable holder of the mortgage, on the other hand.

Welk, 2012 WL 1035433, at *6.

It would be redundant and of little value for the Court to once again reiterate the sound reasoning provided in all the decisions cited above. The holdings are conclusive: the holder of legal and record title to a mortgage need not have possession of, or any interest in, the underlying promissory note to initiate non-judicial foreclosure by advertisement. "[T]he right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable, holder of the mortgage." Stein, 662 F.3d at 980. Where a party "was the mortgagee of record and held legal title to [the] mortgage," and where no improper assignment as to the mortgage has been alleged, the party is "entitled to commence a foreclosure by advertisement under Minnesota law, even if the promissory note (and the corresponding equitable interest in the mortgage) had been transferred to someone else." Id. In this case, there has been no allegation that the foreclosing party was not the mortgagee of record and held legal title to the respective mortgage that was foreclosed. Plaintiffs have not made any factual allegations that the mortgages were not properly assigned or that those assignments were not properly recorded. At the hearing, Defendants

---

[6] The plaintiffs in each of the respective cases have appealed the majority of these decisions to the Eighth Circuit.

provided that the Defendants are the mortgagees of record, which Plaintiffs did not dispute.  Nor

did Plaintiffs argue that there was an issue of whether an assignment of a mortgage had not been

properly recorded or that the mortgagee of record was the party to foreclose.[7]  Thus, in light of

the well-defined law, all of Plaintiffs' claims which are dependent on a "show-me-the-note"

theory fail as a matter of law.

    The more difficult aspect of this case, as in similar cases filed by Plaintiffs' counsel, Mr.

Butler, in light of the confusing manner of pleading each claim, has been to assess whether all

claims are, in fact, based on this flawed theory.  See Welk, 2012 WL 1035433, at *11

("[n]otwithstanding Butler's evasive and often absurd arguments, the Court was able with

considerable effort to identify which claims are (or may be) independent of plaintiffs' show-me-

the-note argument.").  At the hearing on the motions, the Court inquired further from Plaintiffs

regarding their underlying arguments for each claim.  The statements at the hearing demonstrated

that all of Plaintiffs' claims are based on the "show-me-the-note" theory.  (Hr'g Tr. 15, Jan. 12,

2012 [Docket No. 54]) ("this case is about the plaintiffs' substantive rights in the documents they

signed when they closed on securitized loans"); (Hr'g Tr. 16, Jan. 12, 2012) ("in order to execute

any of the substantive rights in the mortgage, the right to declare a default, the right to accelerate,

and the right to exercise in a power of sale, **you have to be a noteholder**"); (Hr'g Tr. 36-37, Jan.

12, 2012) ("based on the notes and mortgages and the securitization documents . . . the only

cognizable party that could have a right to foreclose would be what's called a pooling and

servicing agreement trust.  And the only way that a pooling and servicing agreement trust can

foreclose is if they, guess what, they meet the definitions of the **noteholder in the note**, they're

---

[7] As such, this case is inapposite to Geweke v. U.S. Bank, N.A., No. 09-1890 (JRT/LIB), 2011 WL 4538088, at *3
(D. Minn. Sept. 29, 2011) in which "[t]he [undersigned] Magistrate Judge concluded the Gewekes sufficiently
alleged that Defendants violated Minnesota's foreclosure by advertisement statute by failing to record actual
assignments related to their mortgage loan."

in **possession of the note** and they're entitled to receive payments on that."); (Hr'g Tr. 38, Jan.

12, 2012) ("[i]f they come in and try to prove up their mortgage, they've got to prove the chain

of title of that **note**.").

In other, almost identical actions brought by Plaintiffs' counsel, in which the plaintiffs

there alleged almost the exact same causes of action as are now before the Court, it has been

found that the claims are all based on the flawed "show-me-the-note" theory.  See Iverson, 2012

WL 611196, at *3, 5 (Report and Recommendation), adopted, 2012 WL 611371 (D. Minn. Feb.

24, 2012) (finding that thirteen very similar causes of action should be dismissed because "[t]he

legal position that permeates the amended complaint in this action, and is alleged either

expressly or by incorporation to be the underlying basis for **each and every count**, is the

assertion that a mortgagee cannot undertake foreclosure without possession of the original

note.") ("[l]ikewise, claims for unjust enrichment, breach of fiduciary duty, and fraud are

explicitly based upon the incorrect contention that mortgages are not enforceable without

possession of the note"); Murphy, 2012 WL 104543, at *3 (finding that thirteen very similar

claims should be dismissed because "Plaintiffs' **entire claim in this case** is based on a legal

fallacy that Plaintiffs' counsel William Butler, Esq., has doggedly refused to acknowledge.");

Cartier v. Wells Fargo Bank, N.A., No. 11-2168 (JRT/AJB), slip op. at *12 (Report and

Recommendation) (D. Minn. Feb. 22, 2012) (finding all thirteen very similar claims are

"premised on a fatally defective legal theory and therefore fails to state a cause of action");

Olson, 2012 WL 1660615, at *3 (holding that the argument on thirteen very similar claims "is

that Defendants do not own the notes for Plaintiffs' mortgages and thus cannot foreclose on

those mortgages."); Jerde, 2012 WL 206271, at *2 ("despite their lengthy protestations to the

contrary in their memoranda in opposition to the Motions to Dismiss, Plaintiffs' argument is that

Defendants do not own the notes for Plaintiffs' mortgages and thus cannot foreclose on those mortgages."); <u>Dunbar</u>, 2012 WL 1110161, at *7 ("**[e]ach [of the thirteen] legal and equitable claim[s]** is based on the rejected assumption that enforcement of a mortgage requires possession of the note."); <u>Kraus</u>, 2012 WL 1581113, at *3 (dismissing thirteen very similar causes of action as alleged in the present case "[b]ecause **all of Plaintiffs' claims** are based on the same discredited legal argument, they are all properly dismissed with prejudice."); <u>Pope</u>, 2012 WL 1886493, at *2 ("[a]t bottom, Plaintiffs' claim is that Defendants do not have valid title to the original notes for their mortgages and therefore cannot legally foreclose on their mortgages.").

Count I of the Amended Complaint (Defendants are not Holders of the Original Notes) asserts that "Defendants do not have possession of the Original Notes," Defendants are not otherwise entitled to enforce the Original Notes," and "Defendants cannot establish a chain of title to the Original Notes."  (Am. Compl. ¶¶ 92-95).  Count II (Defendants are not Holders in Due Course of the Original Notes) alleges that Defendants are not holders in due course because they did not take the Original Notes for value and in good faith.  (<u>Id.</u> ¶¶ 97-101).  Count III of the Amended Complaint (Defendants Are Not Real Parties in Interest), in various ways, asserts that because Defendants are not holders in due course of the Original Notes, they cannot foreclose. (Am. Compl. ¶¶ 103-107).  Count IV of the Amended Complaint (Defendants Do Not Have Legal Standing to Foreclose Mortgages) asserts that because Defendants are not holders in due course of the Original Notes, they "do not have a material stake in the enforcement of Plaintiffs' mortgage loans."  (<u>Id.</u> ¶¶ 109-110).  Count V (Demand to Exhibit the Original Note) asserts that "Defendants' demands for payment and notices of default require possession of and valid legal title to Plaintiffs' Original Notes," and demands "that Defendants exhibit the Original Notes and provide evidence of valid legal title to the Original Notes."  All of these claims patently rely on

the "show-me-the-note" theory.[8]  As such they fail as a matter of law.  Additionally, they are not

cognizable claims.  See Murphy, 2012 WL 104543, at *3 (dismissing the same claims as alleged

in Counts III and IV because they "fail[ed] to state a cognizable claim); Peterson, No. 11-2385

(SRN/JJG) (D. Minn. May 30, 2012), slip. op. at *4 n.3 (explaining that none of these counts

raise a claim under Minnesota law).

In Count VII (Slander of Title), Plaintiffs assert that Defendants "recorded mortgage

deeds in the name of a nominee, which did not have legal title to either the Original Notes or the

Mortgages."  (Am. Compl. ¶ 123).  For this claim, Plaintiffs again rely on the argument that

because Defendants allegedly did not have legal title to the underlying notes, they could not

lawfully record the mortgages.  Additionally, Plaintiffs asserted that "[i]n order to assert the right

to foreclose, an entity must hold clear legal title to both the original promissory note and the

mortgage."  (Id. ¶ 127).  Plaintiffs also asserted that Defendants and Law Firm maliciously

published Notices of Foreclosure regarding Plaintiffs' properties, "purporting that they were

holders in due course of Plaintiffs' Original Notes."  (Id. ¶ 128).  The alleged "publication of

the[se] false statements," (Id. ¶ 130), is also the basis of Plaintiffs' claims for fraud against all

Defendants and the specific claim of fraud against Defendant Law Firm.  (See Id. ¶ 152) (fraud

claim against all Defendants) (Defendants have "falsely represented to Plaintiffs that they are

holders in due course of Plaintiffs' Original Notes and Mortgages, that they are the real parties in

interest entitled to enforce the Original Notes . . . ."); (Id. ¶ 194) (fraud claim against Defendant

Law Firm) ("Law Firm made affirmative representations by, among other things, personally

---

[8] To the extent that Count V alleges that Defendants must possess the underlying promissory note to make a demand for payment, Plaintiffs have failed to allege which, if any, specific Defendant has made a demand for payment under the note to any of the Plaintiffs.  The issue is more fully addressed below in the analysis of Plaintiffs' claim for conversion.

contacting Plaintiffs and fraudulently representing that its clients were the owners of the

Plaintiffs' debts and/or were a holder of the Plaintiffs' notes.").  Plaintiffs alleged that:

> in effecting a non-judicial foreclosure in Minnesota, [a law firm] owes [the
> mortgagor] a duty to ensure that its client: 1) is a valid mortgagee; and 2) has
> possession of or is otherwise entitled to enforce Plaintiffs' Original Notes by
> verifying a proper chain of title and/or endorsement of the Original Notes payable
> to the order of their clients asserting the rights of a valid mortgage.

(Id. ¶ 36).  As already described above, a mortgagee need not have possession of the note

to initiate non-judicial foreclosure, and as such, Defendant Law Firm had no duty to ensure that

the foreclosing party had possession of the note when it assisted its client in initiating foreclosure

by advertisement proceedings.  Though wrapped in confusion, Plaintiffs' arguments for

misrepresentation are based on the underlying allegation that by initiating foreclosure,

Defendants were misrepresenting that they had possession of the promissory note.

In their Amended Complaint, Plaintiffs asserted that Defendant Law Firm had

"commenced non-judicial foreclosures by preparing and executing assignments of mortgage

without (a) obtaining express approval from the of-record mortgagee and legal owner of the

mortgage; and (b) without verifying that the mortgage assignee was the actual owner of

Plaintiffs' debt and/or the holder of Plaintiffs' Original Note."  (Id. ¶ 192).  Though on its face

the Amended Complaint makes a reference to the mortgagee of record, at the hearing, as already

explained above, Plaintiffs did not dispute that foreclosure had been initiated by the mortgagee

of record.  Indeed, as already explained, Plaintiffs did not dispute that the parties which

foreclosed were the mortgagees of record.  Rather, Plaintiffs made the argument, as indicated in

the slander of title claim, that because the mortgagee of record did not also have title to the

promissory note, they did not possess legal title—thus, as in all the other claims, Plaintiffs

demonstrated that their claims of fraud are premised on the "show-me-the-note" theory.  (See

Am. Compl. ¶ 124) ("At the time of recording, neither the mortgagee nor any nominee of the mortgagee was the legal owner of Plaintiffs' Original Notes."). Thus, the Court finds that the claims sounding in fraud (Counts XII and XIV) against all Defendants, being based on the flawed "show-me-the-note" theory, also must fail as a matter of law.[9]

The claim for negligent misrepresentation (Count XIII) must also fail. Plaintiffs allege that Defendants misrepresented that they "had the right to foreclose Plaintiffs' mortgages." (Am. Compl. ¶¶ 187-88). As has been noted above, and thoroughly explained by the decisions cited therein, "the right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable, holder of the mortgage." Stein, 662 F.3d at 980. There has been no allegation that any foreclosing party in this case was not the mortgagee of record to the respective mortgage that was foreclosed, and thus, Plaintiffs' claim for negligent misrepresentation fails as a matter of law. Likewise, here too, reading Plaintiffs' complaint as a whole and based on arguments of their counsel in briefs and at motion hearings, the alleged misrepresentation is also asserted to arise because of Plaintiffs' repeated assertions that Defendants should have known possession of the promissory note (as Plaintiffs continue to incorrectly maintain) is a prerequisite to efforts by a mortgagee to foreclose. Therefore, Count XIII also fails as a matter of law.

Similarly, Plaintiffs' claim for breach of fiduciary duty (Count XI), without providing a basis in the law for the claim, alleges in various ways that Defendants had a duty to deal in good faith, fair dealing, and honesty in all material matters, including information regarding the entity that held the promissory notes . . ." and that they breached that duty. (Am. Compl. ¶¶ 146-49).

---

[9] Additionally, the claims asserting fraud have not been alleged with the heightened particularly required under Rule 9(b) and could alternatively be dismissed on that basis as well. See Murphy, 2012 WL 104543, at *3 (explaining that the claims against the defendant law firm could also be dismissed because they were "not pled with the heightened specificity required"); Kraus, 2012 WL 1581113, at *4 ("Plaintiffs have failed to allege their fraud claim with sufficient particularity.").

Because Defendants, as foreclosing mortgagees of record, did not need to have possession of the promissory note, or examine chain of title to the note, and because Plaintiffs claim here is also based on the "show-me-the-note" theory, this claim likewise fails as a matter of law.

In Plaintiffs' claim for equitable estoppel (Count XV), they assert that Defendants "induced Plaintiffs to forebear from pursuing their legal right to challenge Defendants' legal standing to foreclose on their home by representing that they held clear valid title to Plaintiffs' Original Notes." (Id. ¶ 199). Plaintiffs equitable estoppel claim is thus also squarely laid on the foundation of their flawed "show-me-the-note" theory, and therefore, for the reasons already set forth repeatedly above (and in so many other similar cases filed by Mr. Butler), Count XV of Plaintiffs' Amended Complaint fails as a matter of law.

Plaintiffs' claim for accounting (Count XIX) also fails. Plaintiffs provide no basis in the law pursuant to which they are asserting their claim, and thus merely state that "Plaintiffs' Original Notes are contained within PSAs that are filed with the Federal Securities and Exchange Commission, which required detailed financial reports and accounting." (Am. Compl. ¶ 221). The claim as pled does not support a cause of action.

The claims for conversion (Count VIII) and unjust enrichment (Count IX) likewise do not support a cause of action. In the conversion claim, Plaintiffs allege that Defendants "were not entitled to enforce the Original Notes and were not entitled to receive payments on the notes from the Plaintiffs," but "accepted monthly mortgage payments from the Plaintiffs and wrongfully retained those payments thereby depriving Plaintiffs of their property." (Am. Compl. ¶¶ 132-33). In their unjust enrichment claim, Plaintiffs allege that they "conferred a financial benefit on the Defendants in the form of payments made to Defendants with the understanding that Defendants held legal title to and were holders in due course of Plaintiffs' Original Notes."

15

(Id. ¶ 137).  As part of these two claims, Plaintiffs assert that Defendants, who allegedly are not the holders of the Original Notes, accepted monthly mortgage payments that they were not entitled to receive.  (Am. Compl. ¶¶ 131-39).  Though on their face the claims do not seem to be based on a "show-me-the-note" theory, Plaintiffs underlying core theory is in fact based on the alleged separation of possession of the note and mortgage.  See Iverson, 2012 WL 611196, at *4 ("Count V alleges conversion because defendants were not entitled to enforce the original notes.").  Plaintiffs do not dispute that they are in default under the notes, and the Court in Jackson explained that "any disputes that arise between the mortgagee holding legal title and the assignee of the promissory note holding equitable title do not affect the status of the mortgagor for purposes of foreclosure by advertisement."  770 N.W.2d at 501.  Whether the holder of legal title or equitable title would be the rightful owner of a payment submitted by Plaintiffs is one of those disputes that does not affect the status of the mortgagor for purposes of foreclosure by advertisement.  To the extent that the owner of the underlying promissory note may be a different entity from the mortgagee of record, the dispute as to the entitlement of the monthly payment is between those parties.  Plaintiffs have not alleged that they have been subjected to multiple parties requesting the same monthly payments under the same mortgage.  Thus, Plaintiffs' claims for conversion and unjust enrichment, relying on the alleged separation of the promissory note from the mortgage, do not support a cause of action.[10]

        Count X of the Amended Complaint, alleging a civil conspiracy, must also be dismissed.  (Am. Compl. ¶ 140-44).  Plaintiffs allege that Defendants were engaged in a civil conspiracy to commit fraud, misrepresentation, and conversion, based on the alleged fact that Defendants were

---

[10] Additionally, the Court notes that as pled in the Amended Complaint, every plaintiff is alleging a conversion claim against every defendant and an unjust enrichment claim against every defendant except Defendant Law Firm.  Such a pleading is "plainly improper under Fed. R. Civ. P. 8," and in light of the opportunities to amend the complaint, this would alone be an alternative basis for dismissal with prejudice.  Welk, 2012 WL 1035433, at *11-12.

not "holders in due course of the Original Notes entitling them to foreclose on Plaintiffs' homes. (Id.)  As has already been explained, each of these individual claims of fraud, misrepresentation, and conversion is based on the faulty "show-me-the-note" theory, and like the individual claims, Plaintiffs' conspiracy claim must be dismissed.[11]

Finally, Counts VI (Mortgage not properly Perfected), XVI (Due Process Violation), XVII (Discharge of Obligation), XVIII (Qui Tam – Private Attorney General Enforcement) have no merit.  Pope, 2012 WL 1886493, at *4 (dismissing the same claims on a virtually identical complaint because none of them have "any merit whatsoever"); Peterson, No. 11-2385 (SRN/JJG) (D. Minn. May 30, 2012) (same).

For the reasons stated above, the Court finds that Plaintiffs have failed to state any claim upon which relief could be granted and all of Plaintiffs' claims should be dismissed.

## III.    PLAINTIFFS' MOTION TO REMAND

Plaintiffs argue that remand is proper on two grounds: 1) there is a lack of complete diversity between the parties; and 2) the doctrine of prior exclusive jurisdiction precludes the Court from exercising jurisdiction.  (Mem. in Supp. of Mot. to Remand [Docket No. 41] at 3). Each argument is addressed in turn.

### A.  Lack of Complete Diversity

Plaintiffs argue that lack of complete diversity exists because all Plaintiffs are citizens of Minnesota and Defendant Law Firm is a citizen of Minnesota.  They do not dispute that the

---

[11] Although no claim exists captioned "Quiet Title," Plaintiffs argued at the hearing on the motions to dismiss that a quiet title has been properly pled on the basis that the state court complaint had been labeled as a quiet title action and because a referencing to quiet title is made in paragraph 90 of the Amended Complaint.  Even if a quiet title action were properly pled, the cause of action as explained by Plaintiffs at the hearing would not state a claim. Plaintiffs' assertion that they have stated a claim for quiet title merely by alleging that they are in possession and that the foreclosing party does not have possession of the promissory note or is not entitled to enforce the note is "just as frivolous as any other claim that is premised on the show-me-the-note theory."  Welk, 2012 WL 1035433, at *8; Dunbar, 2012 WL 1110161, at *6 ("the 'possible reasons' that the mortgages are invalid all rest on an assumption rejected by the Minnesota Supreme Court in Jackson and the Eighth Circuit Court of Appeals in Stein. This district has repeatedly rejected the same argument.").

remaining parties are diverse citizens and would satisfy the basis for diversity jurisdiction.

Generally, no federal diversity jurisdiction exists "if the plaintiff and any defendant are citizens

of the same State."  Simpson v. Thomure, 484 F.3d 1081, 1083 (8th Cir. 2007) (citing 28 U.S.C.

§ 1332(a)).  Nevertheless, "the right of an out-of-state defendant to remove a diversity suit to

federal court "'cannot be defeated by a fraudulent joinder of a resident defendant.'"  Id. (quoting

Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)).  "Joinder is fraudulent and

removal is proper when there exists no reasonable basis in fact and law supporting a claim

against the resident defendants."  Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir.

2002).  As such, if the claims against a party are dismissed upon a finding of fraudulent joinder,

"the district Court ha[s] subject matter jurisdiction."  Id.

        The Court has already explained that the individually pled claim against Defendant Law

Firm and all other claims pled against Defendant Law Firm and the other Defendants must be

dismissed as a matter of law because they are premised on the fatally flawed "show-me-the-note"

theory.  Though more must be shown than "plaintiff's claim should be dismissed pursuant to a

Rule 12(b)(6)," Knudson v. Sys. Painters, Inc., 634 F.3d 968, 980 (8th Cir. 2011), the Court also

finds that the claims against Defendant Law Firm have no reasonable basis in fact and law, and

thus, as other courts addressing the same issue have consistently found, Defendant Law Firm was

fraudulently joined.[12]  Indeed on very similar allegations, Magistrate Judge Mayeron found that

based on the complaint in Larsen, the predecessor to the present action, the law firm had been

fraudulently joined.  Larsen, 2011 WL 6065426, at *4 (explaining that "the allegations against

[the law firm] rest on the same faulty foundation present in Butler—that the lender/servicer

defendants do not hold the original note and do not, as a result, have the right to foreclose on the

---

[12] Plaintiffs' counsel, Mr. William Butler, has attempted to join a Minnesota law firm to defeat diversity in a number
of other similarly pled cases.

mortgages.").   Other judges within this district have likewise found fraudulent joinder on nearly

identical complaints.  See Iverson, 2012 WL 611196, at *4 ("As previously determined on

motion to remand, the court again concludes that each of the claims against the Law Firm rely

upon a fictitious legal theory regarding the need to possess the note to enforce a mortgage . . . .");

Murphy, 2012 WL 104543, *3 (finding that "the six causes of action against [the defendant law

firm] fail because the underlying theory for the Bank Defendants' liability fails" and finding

fraudulent joinder because the claims against the defendant law firm were "premised on a flawed

legal theory"); Olson, 2012 WL 1660615, at *3 ("[t]here is no reasonable basis supporting a

claim against Peterson, Fram & Bergman and, as such, the law firm must be dismissed as

fraudulently joined."); Jerde, 2012 WL 206271, at *2 ("[t]here is no reasonable basis supporting

a claim against [defendant law firm] and, as such, the Motion to Remand must be denied and

[defendant law firm] dismissed as fraudulently joined."); Anderson v. CitiMortgage, Inc., No.

12-230 (ADM/AJB), slip op. at *6 (D. Minn. April 25, 2012) (Report and Recommendation),

adopted, Docket No. 37 (D. Minn. May 15, 2012) (finding that "there is no reasonable basis in

fact or law supporting a claim against [the] foreclosure law firm"); Dunbar, 2012 WL 1110161,

at *3 ("all of plaintiffs' claims against [defendant law firm] are based on the rejected theory that

holders of recorded assignments of mortgages cannot foreclose without possession of the note.

As a result, the court determines that [the defendant law firm] is fraudulently joined, and

complete diversity exists."); Kraus, 2012 WL 1581113, at *4 ("all of Plaintiffs' claims, including

Plaintiffs' fraud claim against [defendant law firm], depend upon the discredited argument that

only the holder of the promissory note may foreclose on a mortgage by advertisement."); Welk,

2012 WL 1035433, at *15 (finding that all claims against the defendant law firm were frivolous);

Pope, 2012 WL 1886493, at *5 ("Plaintiffs' claims against the law firm fail because their claims against all Defendants fail").

Because Defendant Law Firm in the present case was fraudulent joined, the Court has subject matter jurisdiction over this action.

### B.  Doctrine of Prior Exclusive Jurisdiction Does not Preclude this Court from Exercising Jurisdiction

Plaintiffs argue that Hennepin County District Court assumed jurisdiction of this matter when Plaintiffs initially served all Defendants on July 27, 2011.  (Mem. in Supp. of Mot. to Remand at 2, 10).  They argue that because the "Hennepin County District Court first acquired jurisdiction of this matter[, it] is therefore vested with the exclusive power to hear and determine all controversies in this case."  (Id. at 2).  The Court disagrees.

Plaintiffs initially appeared to broadly argue that because the claims in this case involve matters concerning legal title to real property, and because the suit was first filed in state court, the case could not ever be removed to federal court.  Such an argument would, essentially, have the impact of precluding federal jurisdiction for all mortgage foreclosure cases and has no basis whatsoever in the law.  "Plaintiff fails to distinguish between the situation where a federal action is parallel to a continuing state court action, and the situation here, where the state action is removed to federal court and thereby ceases to exist in the state court."  Karl v. Quality Loan Serv. Corp., 759 F. Supp.2d 1240, 1244 (D. Nev. 2010) (internal citation omitted).  The Court finds that the prior exclusive jurisdiction is inapplicable where only one action, which has been removed to federal court, exists.  See Cartier v. Wells Fargo Bank, N.A., No. 11-2168 (JRT/AJB), slip op. at *7 (Report and Recommendation) (D. Minn. Feb. 22, 2012) (explaining that "[u]pon the removal to federal court the action ceased to exist in the state court"); Dunbar,

2012 WL 1110161, at *3 ("[t]his is not a case where parallel proceedings are occurring or where the parties filed independent actions in state and federal court. Instead, a single action exists in federal court following removal."); <u>Welk</u>, 2012 WL 1035433, at *16-17 ("[t]his case involves a single proceeding—a proceeding that was started in state court and then removed to federal court. When the case was removed, the state court was entirely divested of jurisdiction" . . . . "If plaintiffs were correct, then all of the hundreds of mortgage cases now pending in federal courts that were removed from state courts would have to be remanded. That would help to ease the workload of the federal courts, but unfortunately for the federal courts, plaintiffs' argument is almost entirely without merit."); <u>Cotera v. BAC Home Loan Servicing, LP</u>, No. 3:11-cv-1023-ST, 2011 WL 6013834, at *2 (D. Or. Nov. 3, 2011) (Magistrate Judge's Findings and Recommendation), <u>adopted</u>, 2011 WL 6014215, at *1 (D. Or. Dec. 2, 2011) ("where a single lawsuit filed in state court is later removed to federal court, the prior exclusive jurisdiction doctrine is not implicated."); <u>Martinez v. Bank of Am., N.A.</u>, No: 3:10–cv–00287–RCJ–RAM, 2010 WL 4290921, at *3 (D. Nev. Oct. 20, 2010) ("[i]n this case, the prior exclusive jurisdiction rule does not apply because there is no concurrent or subsequent case involving the subject property pending before the state court."); <u>March v. Pinnacle Mortg. of Nev., LLC</u>, No. 3:11–cv–00319–RCJVPC, 2011 WL 4809198, at *4 (D. Nev. Oct. 7, 2011) ("the prior exclusive jurisdiction doctrine differ[s] from removal because, in removal, a state court loses jurisdiction upon the filing of the petition for removal. . . . As such, the prior exclusive jurisdiction doctrine does not apply.")

In their reply memorandum, Plaintiffs narrowed their argument to the assertion that "Minnesota State courts have **exclusive** jurisdiction over evictions and **any** proceeding involving

Torrens property."[13]  (Reply Mem. in Supp. of Mot. to Remand [Docket No. 50] at 3) (emphasis in original).  Once again, the Court disagrees.

In their memorandum in support of the motion to remand, Plaintiffs asserted that an eviction action had been filed against Mr. Robinson "**since** the removal of [the present] matter." (Mem. in Supp. of Mot. to Remand at 6) (emphasis added).  The Register of Actions for the cited case, however, provides that the eviction proceeding was against Debra L. Robinson and Jeffrey D. Robinson who, as more fully discussed at the hearing, are different people.  (See Hr'g Tr. 28, 40-41, Apr. 12, 2012).  At that time, and without previous mention in the memorandums filed prior to the hearing, Mr. Butler also informed the Court that five other plaintiffs in this case have been subject to eviction actions: Bernard Simpser, Renee Simpser, Jeffrey W. Mancini, Joseph Conely, and Dawn Conely.  (Hr'g Tr. 41, Apr. 12, 2012).  The public records, which the Court is permitted to consider, demonstrate that the eviction proceeding against Bernard Simpser and Renee Simpser was filed in April of 2011 and resolved in August of 2011.  (See Simpser v. Fed. Nat'l Mortg. Association, No. 27-CV-HC-11-2256).  Likewise, the eviction proceeding against Jeffrey Cox was filed in April of 2011 and resolved in July of 2011.  (See Cox v. Fed. Nat'l Morg. Ass'n, No. 27-CV-HC-11-2265.  The eviction proceeding against Joseph and Dawn Conely also began in April of 2011 and concluded in July of 2011.  (See Conely v. Fed. Nat'l Mortg. Ass'n, No. 19HA-CV-11-1860).  For all of these Plaintiffs, there are no longer actions pending in state and federal court.  For most of them, the state court eviction actions were not even pending at the time of removal.  Thus, the prior exclusive jurisdiction doctrine does not apply.  Olson, 2012 WL 1660615, at *3 ("[w]hether or not those [eviction] actions are still

---

[13] The Torrens property argument was not raised in Plaintiffs' memorandum in support of the motion, and it would have been entirely within the Court's authority to strike it under Local Rule 7.1.  D. Minn. LR 7.1 ("A reply memorandum may not raise new grounds for relief or present matters that do not relate to the response.").  However, the Court allowed Plaintiffs and Defendants to address the issue at the hearing and considered the argument as properly submitted to the Court.  (See Hr'g Tr. 82-83, Apr. 12, 2012 [Docket No. 58]).

pending (or were pending at the time this lawsuit was filed), they have no bearing on Plaintiffs' claims here, which seek to stop a foreclosure and 'quiet title,' something that is not at issue in an eviction proceeding."); <u>Dunbar</u>, 2012 WL 1110161, at *3 ("[t]he doctrine of prior exclusive jurisdiction does not apply to the present action; the state court is not exercising jurisdiction over this action. This is not a case where parallel proceedings are occurring or where the parties filed independent actions in state and federal court."); <u>Pope</u>, 2012 WL 1886493, at *5 ("[w]hether the eviction actions are pending, they have no bearing on Plaintiffs' claims here, which seek to stop a foreclosure and quiet title, something that is not at issue in an eviction proceeding.").

Furthermore, the alleged fact that four of the properties at issue are Torrens properties does not divest the Court of jurisdiction under the prior exclusive jurisdiction doctrine.  Plaintiffs rely on <u>In re the Trust Created by Lois W. Hill</u>, 728 F. Supp. 564 (D. Minn. 1990) for the proposition that "Minnesota state courts have exclusive, continuing jurisdiction over Torrens property."  (Reply Mem. in Supp. of Mot. to Remand at 10).  <u>In re Hill</u>, however, is readily and easily distinguishable.

<u>In re Hill</u>, involved a trustee who filed a petition in Minnesota state court "requesting instructions regarding management of a trust created for the benefit of Maud Schroll."  728 F. Supp. at 565.  Schroll removed the petition.  <u>Id.</u>  She "also initiated a proceeding in Ramsey County District Court regarding the Schroll Trust," and "filed a parallel action in San Maeto County Superior Court asking the California court to accept jurisdiction of the trust."  <u>Id.</u> at 566.  Thus, multiple proceedings, in several jurisdictions, were carrying on concurrently.

The <u>In re Hill</u> court contrasted an action involving trusts from one in which the state court's jurisdiction over the property in question is based solely on its jurisdiction over a particular action.  <u>Id.</u> at 567.  In those actions involving trusts, "Minnesota state courts often have

continuing jurisdiction and supervisory responsibilities" and the "removal of a proceeding involving a trust will not eliminate the state court's jurisdiction." Id. Conversely, in the latter type of action, "[r]emoval of those cases to federal court eliminate[s] the state court's jurisdiction over the property and [does] not pose any conflict between the courts." Id. The Court's analysis in In re Hill was clearly focused on, and limited to, the removal of state court actions involving a trust—specifically when an action is initiated under Minn. Stat. §501.35. See id. at 567-68. Thus, In re Hill is inapplicable to the case at bar. See Cartier v. Wells Fargo Bank, N.A., No. 11-2168 (JRT/AJB), slip op. at *12 (Report and Recommendation) (D. Minn. Feb. 22, 2012); Dunbar, 2012 WL 1110161, at *4 ("The present action bears no resemblance to the trust over which the state court had exercised jurisdiction for decades in In re Hill."); Welk, 2012 WL 1035433, at *17 (distinguishing In re Hill); Karnatcheva, 2012 WL 1657531, at *2 ("Hill involved trusts, over which the state courts often have continuing jurisdiction. This case does not involve a trust, nor do Plaintiffs claim that their properties were subject to any state court supervision at the time this action was filed.") (internal citation omitted).

Additionally, the Court rejects Plaintiffs' argument that the state Torrens Registration statute provides state courts with exclusive jurisdiction for any claims related to a real property registered as a Torrens property. Minn. Stat. § 508.10 provides that:

> An **application for registration** shall be addressed to the district court in and for the county wherein the land described therein is situated. The district court shall have original exclusive jurisdiction thereof, and of all proceedings thereunder, and full power to inquire into the title of the land, and any right, title, interest, or estate therein, and any lien, charge, or encumbrance thereon. By its decree, the court shall adjudge and determine the title to the land, the nature, character, extent, and amount of all liens and encumbrances thereon, the priority as between the same, and remove all clouds from the title. The district court shall have full power and authority to make all necessary orders, judgments, and decrees and, for these purposes, the court shall be always open.

The language addressing exclusive jurisdiction speaks to the power of the court regarding an application for registration as Torrens property.  It does not stand for the proposition that any time an issue of title or other claim related to the property is in dispute jurisdiction is found only in the "district court in and for the county wherein the land described there is situated."  See Olson, 2012 WL 1660615, at *3 ("Plaintiffs also contend that because one of the properties is registered under Minnesota's Torrens statute the state court has exclusive jurisdiction over that property. This argument is wholly without merit and deserves no discussion."); Anderson, No. 12-230 (ADM/AJB), slip op. at *6 (D. Minn. April 25, 2012) (Report and Recommendation) (explaining that "the statute applies only to 'an application for registration' and 'all proceedings thereunder.' It does not vest the state district court with continuing jurisdiction to hear any claims involving registered property that arise after the registration").

Thus, for the reasons stated above, the Court finds that jurisdiction is proper and no remand is necessary.

## IV.    DEFENDANTS' MOTION FOR COSTS PURSUANT TO RULE 41(d)

In the motion for costs, Defendants Bank of America, N.A.; BAC Home Loans Servicing, LP; Bank of New York Mellon; Mortgage Electronic Registration Services, Inc.; Merscorp, Inc.; Wells Fargo Bank, N.A.; Federal National Mortgage Association; U.S. Bank, N.A., and Peterson, Fram & Bergman, P.A. seek an award of costs and attorney's fees, pursuant to Federal Rule of Civil Procedure 41(d), against all plaintiffs except Plaintiffs Rebecca C. Robinson and Edward B. Hughes, who were not plaintiffs in the preceding Larsen action.[14]  (Mem. of Law in Supp. of the Rule 41(d) Mot. for Costs and Fees [Docket No. 45] at 15-16).  The Court finds that Defendants have correctly identified the appropriate parties that are within the scope of the Rule

---

[14] Defendant Law Firm joined in the Bank Defendants' motion and incorporated by reference all of the Bank Defendants' arguments.  (See Docket No. 47).

41(d) motion. See Simeone v. First Bank Nat. Ass'n, 125 F.R.D. 150, 155 (D. Minn. 1989) (explaining that although "one who was not a party to a previous lawsuit incurred no costs with respect to that lawsuit and accordingly is not entitled to an award of costs pursuant to Fed. R. Civ. P. 41(d) . . . [t]he addition of new defendants in a second suit . . . does not preclude the Court from awarding costs to one who was a party to the previous action").[15]

As to the merits of the motion, Federal Rule of Civil Procedure 41(d) provides that "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied."

### A. All elements of Fed. R. Civ. P. 41(d) have been satisfied

Under the rule, "the moving party need only establish that: (1) a plaintiff's previous action was dismissed; (2) a second action was commenced that is based upon or includes the same claim against the same defendant; and (3) there are costs and attorneys' fees incurred by the defendant in the prior action that will not be useful in the newly-filed litigation." Siepel v. Bank of America, N.A., 239 F.R.D. 558, 563 (E.D. Mo. 2006) (the Honorable Paul A. Magnuson sitting by assignment) (awarding "$71,972.79 in costs and $923,990.35 in attorneys' fees and expenses that [the moving party] incurred in defending [the previous action].").[16]

Plaintiffs do not dispute that the first element is met in this case. (Mem. in Opp'n to Bank Defs.'s Mot. to Recover Costs Under Fed. R. Civ. P. 41(d) [Docket No. 52] at 3). It is

---

[15] The Court notes that Defendants appear to only seek costs and fees incurred in the Larsen action and not any costs or fees incurred in the Tully action. (See Mem. of Law in Supp. of the Rule 41(d) Mot. for Costs and Fees [Docket No. 45] at 16 n.15 (offering to submit evidence regarding "costs and fees incurred in the Larsen action").

[16] The Court subsequently granted Plaintiffs' motion to vacate the award of fees and costs. Siepel v. Bank of Am., N.A., No. 05-2393, 2007 WL 679645, at * 1 (E.D. Mo. Mar.1, 2007). As explained in a later case by Judge Magnuson, "[t]he Court's decision was based **solely** on the fact that, prior to the Court's ruling on fees and costs, the Florida court had determined that an award of fees and costs was appropriate." Kutten v. Bank of America, N.A., 2008 WL 4838152, at *3 n.4 (E.D. Mo. Nov. 6, 2008).

conceded that all plaintiffs in this case, with the exception of Rebecca C. Robinson and Edward

B. Hughes, initiated an action against Defendants that was previously dismissed.  (See Larsen,

No. 11-1775 (MJD/JSM)).

Plaintiffs also do not dispute that a second state court action was commenced, with only

the addition of the two plaintiffs, on the very same day that the Larsen action in federal court had

been dismissed.  (Mem. in Opp'n to Bank Defs.'s Mot. to Recover Costs Under Fed. R. Civ. P.

41(d) at 3).  Nor do they dispute that the counts and factual allegations in the complaint in Larsen

are overwhelmingly similar to the counts and factual allegations in the complaint in the present

case.  (Id.)[17]  Plaintiffs provide that the differences between the two complaints are that the

complaint in the present case "remov[ed] references to a federal question claims and a demand to

exhibit the note, add[ed] a specific count of fraud against [Defendant Law Firm], and . . .

clarif[ied] which counts were asserted against which Defendant."  (Id.)  The Court has reviewed

the two complaints and found only incidental changes: the addition of the two plaintiffs, the

addition of an allegation of affirmative representation and some further allegations with respect

to the fraud claim against Defendant Law Firm, and removal of references to the federal

government.  Importantly, however, all claims in the present complaint had been previously

substantively asserted in the Larsen complaint—in fact, all of the counts in Larsen are identically

numbered and have the same captions as the counts in the present case.

Thus, the present action clearly involves the same plaintiffs, the same defendants, and is

based upon and includes the same claims as the previously dismissed Larsen action.

---

[17] For purposes of this analysis, the Court compares the Larsen amended complaint, (see Aff. of Mark G. Shroeder [Docket No. 46], Ex. 1), and the complaint initially filed in the present case, (see Summons and Complaint [Notice of Removal, Docket No. 1, Ex. 1]), not the subsequently amended complaint in the present case.  (See Docket No. 5).

As to the third element, Plaintiffs argue that "Defendants have submitted no evidence that they incurred any additional costs as a result of Plaintiffs' voluntary dismissal of their claims." (Mem. in Opp'n to Bank Defs.'s Mot. to Recover Costs Under Fed. R. Civ. P. 41(d) at 2). Defendants admit that they have not submitted specific evidence of costs incurred in the previous action that are not useful in the present action, but provide that if the Court were to order an award, "Defendants will submit for the Court's review sworn declarations evidencing the costs and fees incurred in the <u>Larsen</u> action." (Mem. of Law in Supp. of the Rule 41(d) Mot. at 16 n.15). At the hearing, Defendants offered to submit the evidence demonstrating the costs they incurred prior to the Court's decision on the issue. The Court, however, advised the parties that in the interests of an efficient resolution to the pending threshold issues, such evidence did not need to be submitted in advance. (Hr'g Tr. 83, Apr. 12, 2012).

On the record before it, and in light of the procedural history of both cases as outlined in this Report and Recommendation, the Court finds that at least some of the costs incurred in the <u>Larsen</u> action are not useful for Defendants in the present case. However, on the present record, the Court cannot be sure as to the extent of those costs. As such, the Court recommends that if this Report and Recommendation is adopted, a subsequent hearing be held, with an opportunity for each party to file written submissions, to determine the scope and extent of Defendants costs and fees incurred in the <u>Larsen</u> action which are not useful for the present action and which Defendants may recover under Rule 41(d). Certainly, it will be Defendants burden at that time to establish the specific costs that they incurred in the <u>Larsen</u> action that are not useful in the present case, and Plaintiffs will have the opportunity to rebut that showing.

The Court finds that all three underlying requirements have been met with the exception of a demonstration as to which specific costs and fees Defendants have incurred in the <u>Larsen</u> action that will not be useful in this subsequently re-filed litigation.

### B.  Plaintiffs' actions merit an award under Fed. R. Civ. P. 41(d)

Even though the three underling elements to satisfy Rule 41(d) may be met in any given case, the rule is discretionary, and the Court may, but need not, award costs or fees.  "Costs awarded under Rule 41(d) . . . are intended to serve as a deterrent to forum shopping and vexatious litigation."  <u>Simeone v. First Bank Nat. Ass'n</u>, 971 F.2d 103, 108 (8th Cir. 1992).  The purpose of Rule 41(d) is to "promote[] the just, speedy and inexpensive determination of every action by deterring plaintiffs from changing forums mid-litigation and forcing a new court to start from scratch, thus wasting litigant expenses and judicial resources."  <u>Cadle Co. v. Beury</u>, 242 F.R.D. 695, 698 (S.D. Ga. 2007).

Defendants argue that "Plaintiffs have engaged personally in litigation that is vexatious, in blatant forum shopping, and in seeking delay for no reason other than the hope they can get away with not paying their mortgage loan for a few more months."  (Mem. of Law in Supp. of the Rule 41(d) Mot. for Costs and Fees at 1).  Plaintiffs dispute that they have engaged in any vexatious litigation, used Rule 41(a) for any improper purpose, or that they have engaged in forum shopping.  (Mem. in Opp'n to Bank Defs.'s Mot. to Recover Costs Under Fed. R. Civ. P. 41(d) at 5-10).  The Court finds that the record convincingly demonstrates that Plaintiffs have engaged in vexatious litigation and forum shopping.

 As demonstrated by the procedural history described above, Plaintiffs have continuously demonstrated attempts to delay resolution of the matter and inappropriately sought to avoid litigation in federal court.  On October 26, 2010, a number of plaintiffs (<u>Tully</u> plaintiffs)

commenced an action in state court with Mr. William Butler as their attorney.  The defendants in

Tully removed the case to federal court on November 24, 2010.  Upon Defendants' motions to

dismiss, on May 17, 2011, the Honorable Donovan W. Frank dismissed all of the claims without

prejudice because of a pleading failure.  Tully v. Bank of America, N.A., No. 10-4734

(DWF/TNL), 2011 WL 1882665, at *6 (D. Minn. May 17, 2011).  Judge Frank also found that

Sheriff Richard W. Stanek was fraudulently joined and denied Plaintiffs' motion to remand.  Id.

at *4.

     The Tully complaint was amended, 3 plaintiffs dropped out, and 9 additional plaintiffs

were added before the action was brought again in state court on June 3, 2011.  See Larsen et al

v. Bank of America, N.A. et al, No. 11-1775 (MJD/JSM), Docket No.1, Ex.1.  On July 1, 2011,

Plaintiffs filed an Amended Complaint, which added an additional 13 plaintiffs to the case.  Id.,

Docket No. 2.  The Larsen defendants removed the case to federal court once again on July 5,

2011.  Id.  On July 7, 2011, the plaintiffs filed a motion to remand to state court.  Id., Docket No.

10.

     While the plaintiffs' motion to remand was pending, on July 13, 2011, Judge Frank

issued a decision—in a separate action brought by Mr. Butler that involved the same types of

claims—in which Judge Frank found that the claims failed as a matter of law.  Butler v. Bank of

America, N.A., No. 11-461, 2011 WL 2728321, at *7 (D. Minn. Jul. 13, 2011).  Judge Frank also

denied the motion to remand, finding that the law firm defendant had been fraudulently joined.

Id.

     Subsequently, on July 21, 2012, relying on Judge Frank's decision in Butler, Magistrate

Judge Janie S. Mayeron issued a report and recommendation stating that the motion to remand

should be denied because the law firm had been fraudulently joined.  <u>See</u> <u>Larsen</u>, 2011 WL 6065426.

Rather than objecting to Magistrate Judge Mayeron's report and recommendation, the plaintiffs voluntarily dismissed their case on July 27, 2011.  The plaintiffs (with the assistance of their Counsel, Mr. Butler) once again amended the complaint, added two additional plaintiffs (Rebecca C. Robinson and Edward B. Hughes) and **on the very same day** that they dismissed their complaint in federal court, they brought the action in state court.  <u>Robinson et al v. Bank of America, N.A. et al</u>, No. 11-2284 (MJD/LIB), Docket No. 1, Ex. 1.  The case was then once again removed on August 9, 2011 and is now before the Court as <u>Robinson et al v. Bank of America, N.A. et al</u>.  <u>Id.</u>  On August 12, 2011, Plaintiffs filed an Amended Complaint.  (<u>See</u> Docket No. 5).

At the hearing on April 12, 2012, the Court made an extended inquiry into the reasoning for dismissing and re-filing the <u>Larsen</u> action.  (<u>See</u> Hr'g Tr. 65-70, 75-76, Apr. 12, 2012). When the Court inquired as to why Plaintiffs did not simply file a motion to amend the complaint in <u>Larsen</u> to address any deficiencies they believed existed in light of Magistrate Judge Mayeron's report and recommendation, Mr. Butler speculated (without any evidentiary support in the record) that it may have been that Rebecca C. Robinson and Edward B. Hughes walked into his office looking to get involved in the case and stay off an eviction, and Mr. Butler sought to include them immediately.  (<u>See</u> <u>Id.</u> 66-67).  The Court then inquired as to why those two Plaintiffs didn't simply initiate their own law suit, and Mr. Butler speculated that they may not have been able to afford to start a separate action.  However, upon further inquiry, Mr. Butler acknowledged that they were paying him for his representation in the present case.  Finally, Mr. Butler insinuated that it would be economically inefficient for him to handle each plaintiff's case

separately.  (See Id. 69) ("You'd have to be in my shoes, I guess.  The economies of doing one person just don't work.").

Even if the Court were to find that Mr. Butler's speculated reasons for merging the two new plaintiff in mid-litigation with the Larsen plaintiffs was a genuine attempt to provide service to his clients, Mr. Butler and therefore the Plaintiffs, have offered no legitimate reason whatsoever as to why the Larsen action had to be dismissed from federal court so the Plaintiffs could be added to the Larsen action in order to re-file it the same day in state court.[18]

Plaintiffs' actions in waiting to file a motion to remand until after the motions to dismiss in the present case were heard demonstrate yet another attempt to prolong the litigation on the merits of the claims at issue, and supports the argument that Plaintiffs have engaged in vexatious litigation.  After removal of this case, on August 11, 2011, Defendants filed motions to dismiss on September 26, 2011 and December 1, 2011.  (See Docket Nos. 11-16, 33).  On November 3, 2011, Plaintiffs filed a motion to remand.  (See Docket No. 27).  However, on December 8, 2011, Plaintiffs withdrew the motion.  (See Docket No. 35).  The Court heard the motions to dismiss and took them under advisement on January 12, 2012.  (See Docket No. 37).  Only after the Court heard the motions to dismiss did Plaintiffs re-file a motion to remand to state court.  (See Docket No. 38) (filed on February 7, 2012).  The motion to remand did not present any issues that did not already exist at the time of removal of this case in August of 2011, and, at the hearing on April 12, 2012, Plaintiffs (through Mr. Butler) failed to offer any reasonable

---

[18] In their memorandum in opposition to the motion, Plaintiffs argued that they dismissed the Larsen Complaint because they were looking to "remedy the deficiencies" in light of Judge Frank's decision in Butler.  (Mem. in Opp'n to Bank Defs.' Mot. [Docket No. 52] at 4).  Aside from the already raised alternative that Plaintiffs could have sought to amend their complaint rather than dismissing the entire action and re-filing it, stands the obvious fact that the Larsen action was dismissed from federal court and re-filed in state court on the very same day.  When considering that the complaint in Larsen and the complaint in the present case are virtually identical, it is beyond plausibility that Plaintiffs dismissed in an attempt to "re-tool" the complaint when they merely re-filed essentially the same complaint the very same day.

justification for the delay in filing the motion to remand.[19]  Furthermore, a pattern and practice by Plaintiffs' counsel provides a strong basis to suggest that Plaintiffs have also joined Defendant Law Firm here in a mere attempt to avoid removal to federal court.  See Welk, 2012 WL 1035433, at *15 ("The Court does not doubt that Butler joined [the law firm] as a defendant solely to block removal of the case to federal court.").

The Court gave Plaintiffs an extended opportunity at the April 12, 2012 hearing to provide some rational reason for their actions that did not demonstrate vexatious conduct. Plaintiffs' counsel failed to articulate any such reason that could not have been simply remedied by a motion to amend the complaint in the Larsen action without voluntarily dismissing that action.

"The defendant is not required to prove bad faith on the part of the plaintiff in order to be awarded the costs of a previous action, but the court may consider the plaintiff's motive in dismissing the prior action when deciding whether to award costs."  9 Wright & Miller, Federal Practice & Procedure § 2375 (3d ed.).  Though no bad faith showing is necessary for an award under Rule 41(d), Siepel, 239 F.R.D. at 563, in the absence of any showing to demonstrate that their actions had some proper purpose, the only plausible conclusion that the Court can draw on the record now before it is that Plaintiffs sought to delay the resolution of this case and engaged in forum shopping.  As already found in other similar cases, this type of conduct constitutes vexatious litigation and demonstrates an attempt to forum shop.  See Dunbar v. Wells Fargo Bank, N.A., No. 11-3683 (DSD/FLN), 2012 WL 1394666, at *3 (D. Minn. Apr. 23, 2012) (finding that Mr. Butler's actions "and his response to the motions to dismiss and remand

---

[19] Courts in this District have also taken notice of, and reprimanded, the fraudulent joinder of a defendant in these types of cases "in an effort to defeat diversity jurisdiction and preclude removal to federal court."  Murphy, 2012 WL 104543, at *4 ("Mr. Butler has a pattern of including fraudulently joined parties to his 'show me the note' suits, apparently hoping to evade federal court where his nearly identical claims were summarily dismissed three times in 2011.").

represent vexatious multiplication of proceedings" and awarding attorney's fees under 28 U.S.C. § 1927); Welk, 2012 WL 1035433 (finding "no doubt that Butler's conduct warrants an award of fees under [28 U.S.C.] § 1927, which permits such an award for conduct that "multiples the proceedings in any case unreasonably and vexatiously," and explaining that "Butler's unreasonable and vexatious conduct in [the] case went far beyond filing a frivolous complaint.")

Furthermore, the Court is cognizant that other cases with very similar claims have been filed, voluntarily dismissed, and re-filed in similar fashion by Plaintiffs' counsel.  Plaintiffs here admit as much.  (Mem. in Opp'n to Bank Defs.'s Mot. to Recover Costs Under Fed. R. Civ. P. 41(d) at 7) ("This case is similar to several others that Plaintiffs' counsel has filed on behalf of other individuals and families in this State.").  Without providing an exhaustive list of the procedural history of the more than 30 actions, and a complete accounting of each plaintiff through each case, filed by Mr. Butler on behalf of similar plaintiffs in this District, the following demonstrate that the actions taken by the Plaintiffs and their counsel in the present case now before the Court are not a procedural anomaly.  Kent v. Bank of America, N.A., et al, No. 11-2315 (JRT/LIB) initially began as Emmick et al v. Bank of America, N.A. et al, 11-1307.  On July 22, 2011, after Magistrate Judge Mayeron's unfavorable report and recommendation issued on July 21, 2011, the plaintiffs in Emmick voluntarily dismissed their case.[20]  The Plaintiffs once again amended their complaint, added two additional plaintiffs (Theodore E. Kent and LeMay F. Kent), and again re-filed the action in state court as Kent v. Bank of America, N.A., et al, No. 11-2315 (JRT/LIB), which was once again removed and is pending before the Court.  Similarly, Rother et al v. Wells Fargo Bank, N.A. et al, No. 11-1703 was voluntarily dismissed and re-filed again as Pope et al v. Wells Fargo Bank, N.A., et al, No. 11-2496.

---

[20] In referencing the case file number for the cases within this paragraph, the Court refers to the case file number for the case in the U.S. District Court for the District of Minnesota and not the case file number for the case in the state court prior to removal.

Likewise, <u>Lundeen et al v. CitiMortgage, Inc. et al</u>, No. 11-1604 and <u>Jaakola v. CitiMortgage, Inc.</u>, No. 11-01272 were both voluntarily dismissed, the plaintiffs from each action were combined (with the exception of a few), and the actions were re-filed again in state court as <u>Peterson v. CitiMortgage, Inc.</u>, No. 11-2385.

Plaintiffs here argue that the actions by Plaintiffs' counsel in other cases are irrelevant to an award of costs in this present case pursuant to Rule 41(d).  (<u>Id.</u> at 8-9).  Though the Court limits its analysis as to the specific history of the parties involved in this present case, the Court need not turn a blind eye to the events and machinations in a litany of other nearly identical cases filed by Plaintiffs' counsel within this district in which the plaintiffs there have taken a very similar course of conduct.  The striking similarity between the procedural maneuvering in those other cases and those of the present case show a concerted plan rather than a one time choice of conduct unique to this present case.  Plaintiffs' counsel's comments at the hearing demonstrated the same: "But I can tell the Court we took a very hard look at Rule 41 and seeing as this viable, can we do this? . . . **we** looked at the four corners of Rule 41 and thought, okay, we can do this.  We can keep the Robinsons in their house and clean up the Complaint a little bit at the same time."  (Hr'g Tr. 75, Apr. 12, 2012).  Plaintiffs, as the party litigants, are responsible for that plan.  <u>See, e.g.</u>, <u>Welk</u>, 2012 WL 1035433, at *24 (explaining that materials submitted in that case "suggest that Butler's clients may be paying him, not for bringing legitimate claims, but simply for each month that he delays foreclosure by tying up mortgagees in frivolous court proceedings").  Plaintiffs' counsel is the channel through which the Court reaches and analyzes Plaintiffs' claims.  "That counsel may have made the decision[s] is of no moment, for purposes of Rule 41(d)."  <u>Groom v. Bank of America</u>, 2010 WL 627564, at *2 (M.D. Fla. Feb. 23, 2010).  "[T]he circumstances resulting in the Rule 41(d) sanctions were entirely within the control of the

[38] Plaintiffs and their counsel, who are masters of their claims." Id. Indeed, other courts have also looked to the actions of counsel when determining whether an award pursuant to Rule 41(d) is appropriate. See Siepel, 239 F.R.D. at 564) ("The record provides ample evidence that Plaintiffs are forum shopping. **Plaintiffs' counsel** began filing lawsuits against the Bank four years ago seeking to certify a nationwide class to challenge the practices at issue in this litigation.").[21]

It is clear that Rule 41 and Rule 11 have different foundations in the law. Rule 41(d) provides for a different form of alleged misconduct, not one dependent on the merits of the theory asserted, and gives a separate independent basis for sanctions apart from Rule 11. Considering the lack of any rational reason presented during the motion hearing on April 12, 2012 when the Court inquired why such procedural actions as are at issue had been taken in this case, intentional delay and tactics of evasion are the most obvious conclusion.[22] Black's Law Dictionary defines vexatious as "without reasonable or probable cause or excuse; harassing; annoying." Black's Law Dictionary 712 (9th ed. 2009); see also United States v. Knott, 256

---

[21] In Welk, Judge Schiltz portrayed the typical process taken by the plaintiffs and their counsel in this and other similar cases:

> Butler takes a group of a dozen or so individuals who are facing foreclosure but otherwise have no connection to one another; he gins up a dozen or so claims against a dozen or so defendants grounded mostly on the show-me-the-note theory; he improperly packages these claims into a single state-court action; and he fraudulently joins a single nondiverse defendant (typically a law firm that represented one of the lenders in foreclosure proceedings) in an attempt to block removal to federal court. The defendants generally remove the cases to federal court, and Butler then moves to remand. If the judge denies Butler's motion, he might "remand" the case himself by voluntarily dismissing it and refiling it in state court within a day or two, thereby starting the process all over again. Butler might also "judge shop" in the same manner; if he does not like his chances before a particular federal judge, he might voluntarily dismiss his case, promptly refile it in state court, and start the process all over again. To hide his conduct, Butler will reorder the names of the plaintiffs or substitute a new plaintiff for one of the old plaintiffs, so that the refiled case will have a different caption.

2012 WL 1035433, at *2. Citing this present case specifically as "the most egregious example" of his actions, Judge Schiltz found that Plaintiffs' counsel had "engaged in brazen delay tactics and judge-shopping by voluntarily dismissing actions only to turn around and refile them again immediately afterwards." Id. at 19-20.

[22] The Court here specifically refers to the actions taken in voluntarily dismissing the Larsen case from federal court and then re-filing the present case the same day in state court.

F.3d 20, 28 (1st Cir. 2001); <u>Varner v. BNSF Ry. Co.</u>, No. 09-5076-JLV, 2011 WL 835887, at *4

(D. S.D. Mar. 4, 2011).  Where the "plaintiffs ha[ve] presented an insufficient explanation to

rebut the strong inference of forum shopping" and offer "no real explanation for [their] actions,"

the Court finds that "[s]uch vexatious conduct is properly punished by an award of costs . . .

under Rule 41(d)."  <u>Simeone</u>, 125 F.R.D. at 156-57.

 Finally, Plaintiffs' reliance in <u>Farm Boy Co-Op and Feed Co., LLC v. Red River</u>

<u>Clothing, Inc.</u>, 2010 WL 935747, at *1 (D. Minn. Mar. 12, 2010) is misplaced.  In <u>Farm Boy</u>, the

plaintiff, a Minnesota LLC, had brought a trademark infringement suit against a Texas

corporation.  2010 WL 935747, at *1.  Upon the defendant's motion, the Court transferred the

case to Texas.  <u>Id.</u>  Shortly thereafter, the plaintiff voluntarily dismissed the case.  <u>Id.</u>  Only a

couple of months later, the plaintiff filed a similar claim in the District of Minnesota but included

additional jurisdictional facts not in the original complaint.  <u>Id.</u>  The defendant again moved to

transfer the case, which the Court granted, and the defendant moved for sanctions pursuant to

Rule 41(d), arguing that the plaintiff's actions constituted a blatant attempt to forum shop.  <u>Id.</u> at

*4.  In denying the award, in a brief analysis, the Court stated that "[t]he Complaints in the first

action and the instant action are not identical, rather, the Complaint in this action includes

additional information than the allegations enumerated in the Complaint in the first action."  <u>Id.</u>

As such, the case is inapposite to the present case because the Court in <u>Farm Boy</u> held that the

basic elements necessary to trigger Rule 41(d) had not even been met.[23]

 For these reasons, the Court finds that Plaintiffs' actions in the present case merit an

award under Federal Rule of Civil Procedure 41(d).  The extent of that award, as explained

---

[23] Plaintiffs also argued that an award pursuant to Rule 41(d) is inappropriate in this case because the initial lawsuit's life was shorter than in other cases.  This, however, is more applicable to the **amount** of costs that Defendants incurred, and, in light of the specific history of the present case, the Court finds it unpersuasive as to **whether** an award pursuant to Rule 41(d) should be made.

above, should be determined by a subsequent hearing and briefing, if this Report and

Recommendation is adopted on the issue of an award pursuant to Rule 41(d).

### C.  Fed. R. Civ. P. 41(d) Permits an Award of Attorney's Fees

Plaintiffs argue that Federal Rule of Civil Procedure 41(d) does not permit an award of

attorney's fees.  (Mem. in Opp'n to Bank Defs.'s Mot. to Recover Costs Under Fed. R. Civ. P.

41(d) at 10-12).  The Court disagrees.

The Eighth Circuit Court of Appeals has previously affirmed a district court's award of

attorney's fees pursuant to Rule 41(d).  Evans v. Safeway Stores, Inc., 623 F.2d 121, 122 (8th

Cir. 1980) (specifically citing Rule 41(d) and holding that "the district court did not abuse its

discretion in awarding defendant-appellee $200 **attorney fees**.") (emphasis added).  The issue of

attorney's fees was the only issue on appeal, and thus, the Eighth Circuit addressed the legal

question directly.  Id.  Despite the Eighth Circuit's holding in Evans, this Court has previously

declined to award attorney's fees pursuant to Rule 41(d).  See Simeone v. First Bank Nat. Ass'n,

125 F.R.D. 150, 155 (D. Minn. 1989), aff'd by 971 F.2d 103 (8th Cir. 1992).  Although the Court

acknowledged Evans, without discussing or distinguishing it, it held that "based upon its own

research and a review of the cases cited by defendants that attorneys' fees are not recoverable as

part of 'costs' under Rule 41(d)."  Id.  The Court never stated that it disagreed with the decision

of the Eighth Circuit in Evans, and thus the Court here presumes that Simeone merely found it

inapplicable to the circumstances in that particular case.[24]

---

[24] Additionally, in Simeone, the Court did not limit the Rule 41(d) award to merely a strict definition of "costs" such as filing fees, as it awarded $11,550.00 in expert witness fees (which are not found in the language of Rule 41(d) either) that Defendants incurred in the previous litigation.  Simeone, 125 F.R.D. at 156-57.  The Court noted that "Rule 41(d) is intended to confer broad discretion upon federal courts" and that the Court has discretion to "make such order for the payment of costs of the action previously dismissed as it may deem proper."  Id. at 153, 156.  In affirming the award of expert witness fees, the Eighth Circuit did not address the district court's denial of attorney's fees.

The Court is satisfied that the Eighth Circuit's holding in <u>Evans</u> governs the scope of recoverable costs under Rule 41(d) in this case.  If the scope of recovery under Rule 41(d) was in fact limited to only *de minimis* costs such as the filing fee and any costs associated for paper copies and filings with the Court in the previous lawsuit, then the Court would indeed not have the broad discretion that <u>Simeone</u> in fact held it did.  Though attorney's fees need not be awarded in every case when an award is made pursuant to Rule 41(d), the Court finds that, attorney's fees are recoverable within the Court's discretion.  This rule is not only supported by the Eighth Circuit Court of Appeal's holding in <u>Evans</u> but is also the majority rule in the Eighth Circuit.[25] See <u>Behrle v. Olshansky</u>, 139 F.R.D. 370, 374 (W.D. Ark. 1991) ("[t]he court believes and finds that Congress must have intended when Rule 41(d) was adopted to give the court discretion to include reasonable **attorney's fees** in the 'costs' that could be imposed."); <u>Hayes v. Bank of America</u>, 2011 WL 148277, at *1 (E.D. Mo. Jan. 18, 2011) (citing Fed. R. Civ. P. 41(d) and <u>Evans</u> and ordering that "[i]f plaintiffs actually do attempt to file another case based on the same claims or arising from the same facts against any of the defendants here, they must first pay the **attorneys fees** and costs incurred by defendants arising from the previously-dismissed lawsuits."); <u>Briggs v. Wal-Mart Stores East, LP</u>, 2008 WL 3890549, at *2 (E.D. Mo. Aug. 18, 2008) ("Rule 41(d) authorizes a court to order a plaintiff to pay the defendant's cost and reasonable **attorney's fees** from a previously dismissed action that is re-filed"); <u>Copeland v. Hussmann Corp.</u>, 462 F. Supp.2d 1012, 1024 (E.D. Mo. 2006) ("[t]he Court, following the Eighth Circuit's ruling in <u>Evans</u> and the majority of other courts, holds that Rule 41(d)'s language of 'costs' **includes attorney's fees**."); <u>Edwards v. Ports Petroleum Co., Inc.</u>, 2006 WL

---

[25] Other circuits have disagreed with the rule in the Eighth Circuit.  <u>See, e.g.</u>, <u>Rogers v. Wal-Mart Stores, Inc.</u>, 230 F.3d 868, 875 (6th Cir. 2000) (recognizing that a split of authority exists on the issue and acknowledging that "the majority of courts find that attorney fees are available under Rule 41(d)," but relying on the plain language of the rule and holding that "attorney fees are not available under Rule 41(d)").

1441611, at *1 (D. Neb. May 23, 2006) ("if the Plaintiff commences a future action against the

Defendant based on the same claim or claims, the Defendant may move for an order for the

payment of its costs incurred in this action, **including attorney fees**, pursuant to Fed. R. Civ. P.

41(d)."); Siepel, 239 F.R.D. at 563-64 ("the Eighth Circuit has interpreted Rule 41(d) to include

fees where the law underlying a plaintiff's claim permits recovery of those fees."); CIVCO Med.

Instruments Co., Inc. v. Protek Med. Prods., Inc., 231 F.R.D. 555, (S.D. Ia. 2005) (finding that

"the circumstances of this case do not warrant the award of attorney fees or costs" but explaining

that "[t]he Court disagrees that Simeone is 'controlling' in the Eighth Circuit on the issue of

whether attorney fees are costs under Rule 41(d),").  Additionally, in Farm Boy Co-Op, 2010

WL 935747, at *3-4, citing Simeone, this Court once again acknowledged that "Rule 41(d)

confers broad discretion on district courts to order payment of costs," and rather than

affirmatively holding that attorney's fees are not available under Rule 41(d), the Court stated that

it has no need to address the issue because no award under the rule was made.  Id. at *3, n.4.[26]

  For these reasons, the Court finds that an award of attorney's fees is within the Court's

authority under Federal Rule of Civil Procedure 41(d) and that some attorney's fees are

appropriate in this specific case.  The extent of such an award should be determined by an

additional hearing and briefing.

---

[26] Furthermore, the Eighth Circuit has previously held that "[i]n granting a motion for voluntary dismissal [under
Rule 41(a)], district courts typically impose the condition that plaintiff pay the defendant the reasonable attorney's
fees incurred in defending the suit."  Belle-Midwest, Inc. v. Missouri Property & Cas. Ins. Guar. Ass'n, 56 F.3d 977,
978-79 (8th Cir. 1995).  This Court has also previously conditioned voluntary dismissal with an award of attorney's
fees if Plaintiffs were to initiate a second lawsuit in which Defendants' legal fees would have to be repeated or
would not have been incurred but for the unique procedural history of the initial suit.  See Empo Corp. v. J.D.
Benefits, Inc., No. 03-2480 (RHK/AJB), 2003 WL 21517360, at *4 (D. Minn. Jun. 26, 2003) (explaining that the
twofold purpose of conditional dismissal awarding costs and attorney's fees under Rule 41(a)(2) is "to fully
compensate the defendant for reasonable expenses incurred before dismissal and to deter vexatious litigation.").  If
the Court has the undoubted authority to condition voluntary dismissal under Rule 41(a) on the payment of the
defendants' attorney's fees if the case is re-filed, then surely as part of its broad discretion under Rule 41(d), and in
light of the overwhelming case law within this Circuit, it also has the authority to award attorney's fees to
defendants who have once again been hailed into court to defend the same claims against the same plaintiffs where
the voluntary dismissal was done at a time when leave of the court was not required.

## V. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Defendants' Motions to Dismiss [Docket Nos. 11, 14, 16 and 33] be **GRANTED** as more fully described above;

2) Plaintiffs' Motion to Remand to State Court [Docket No. 38] be **DENIED** as more fully described above; and

3) Defendants' Motions for Attorney Fees and Costs Under Rule 41(d) [Docket Nos. 43 and 47] be **GRANTED** subject to a subsequent hearing to determine the amount of fees and costs to be awarded.

Dated: May 31, 2012

s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by June 14, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.